THE SILLIMAN COMPANY *v.* S. IPPOLITO & SONS, INC., ET AL.
(2329)

TESTO, HULL and DUPONT, Js.

Argued October 13—decision released December 6, 1983

*Dion W. Moore,* for the appellant (plaintiff).

*Lawrence P. Weisman,* with whom, on the brief, was *Ellen B. Lubell,* for the appellees (defendants).

DUPONT, J. The plaintiff, The Silliman Company (Silliman), appeals[1] from the trial court's judgment in favor of the defendants, S. Ippolito & Sons, Inc., et al.[2] (Ippolito), on both the plaintiff's complaint and the defendants' counterclaim.

Silliman furnished services and supplies, as a subcontractor, to Ippolito, the primary contractor on a sewer extension project for the city of Stamford. Prior to entering into a written contract with Ippolito, Silliman had already furnished some work for the project. After the execution of the contract, and upon completion of additional work, the plaintiff requested payment for all of its work to date by mailing invoices to Ippolito for that work on five separate occasions. When Ippolito failed to make payment, Silliman notified Ippolito that it considered the contract cancelled. Subsequently, the plaintiff brought suit against the defend-

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] Fidelity and Deposit Company of Maryland is also a defendant in its capacity as surety on a performance bond under which it agreed to be jointly and severally liable with S. Ippolito & Sons, Inc., for the payment of all labor and material on the project.

ants for $26,997.18, the amount of the unpaid invoices.[3] The defendants counterclaimed for damages arising from the alleged wrongful breach of the contract by the plaintiff.

The trial court rendered judgment for the defendants on the counterclaim in an amount equal to the difference between the contract price, at which the plaintiff had agreed to perform all of the work, and the actual cost of obtaining performance of the work not completed by the plaintiff, offset by $26,997.18, the amount admittedly due the plaintiff.

If the premise is correct that the plaintiff could not rescind the contract for the failure of Ippolito to make periodic payments, then it follows that the plaintiff breached the contract and Ippolito must be awarded damages. The measure of damages is that sum which is sufficient to place the defendant in the position, insofar as money can, as it would have been in had the plaintiff performed the contract in the manner in which it had agreed. *Lar-Rob Bus Corporation* v. *Fairfield*, 170 Conn. 397, 404–405, 365 A.2d 1086 (1976). The trial court utilized the correct damages formula in order to ascertain the amount of the damages due, assuming that the plaintiff had breached its contract. The issue of this case is not, however, whether the measure of damages was accurate, but whether the plaintiff could rescind the contract for the failure of Ippolito to make work-in-progress payments during the course of the performance.

The written contract of the parties provides in part that: "Payment [is] to be made as follows: Net thirty days after The Silliman Company in-progress monthly estimates or net thirty days after completion of The Silliman Company work, whichever applies."

---

[3] The plaintiff, in the alternative, claims to be a third party beneficiary of the contract between the defendant and the city of Stamford. The merits of this claim need not be addressed in view of the decision of this court.

The written contract also contains two other provisions which are relevant and they are as follows: "3. If the full price and any additional charges are not fully paid within 30 days from the date on which the final payment shown on the front hereof is due, a default and collection charge equal to 1% per month of the unpaid balance shall be added to such balance commencing from the date on which such final payment was due.

"4. In addition to any such default and collection charges, all court costs and an attorney's fee, not exceeding the maximum amount permitted by law, shall be paid by buyer, if buyer's account should be referred to an attorney at law for collection."

The general rule to be applied in construction cases is that the failure to make progress payments is a breach of contract so substantial as to render the contract nugatory. *Guerini Stone Co.* v. *Carlin Construction Co.,* 248 U.S. 334, 344, 39 S. Ct. 102, 63 L. Ed. 275 (1919); *United States* v. *Southern Construction Co.,* 293 F.2d 493, 498 (6th Cir. 1961), rev'd on other grounds, 371 U.S. 57, 83 S. Ct. 108, 9 L. Ed. 2d 31 (1962); *Morici* v. *Jarvie,* 137 Conn. 97, 101, 75 A.2d 47 (1950).

The failure to make installment payments when due goes to the essence of a contract. *Morici* v. *Jarvie,* supra. Rescission is the proper remedy for failure to do that which is basic to the contractual obligation of a party to a contract. *Gilman* v. *Pedersen,* 182 Conn. 582, 584, 438 A.2d 780 (1981); *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 382, 321 A.2d 444 (1973); *Martin* v. *Kavanewsky,* 157 Conn. 514, 519, 255 A.2d 619 (1969). Rescission is the remedy for an unjustified failure to make progress payments. *United States* v. *Western Casualty & Surety Co.,* 498 F.2d 335, 339 (9th Cir. 1974). A failure to make any payments for work in pro-

gress goes to the root of the bargain of the parties and defeats the object of the parties in making the agreement. The remedy of rescission does not need to be expressly stated in an agreement. *Keyes* v. *Brown,* 155 Conn. 469, 475, 232 A.2d 486 (1967).

The defendant Ippolito in this case claims that the prior dealings of the parties, the alternative language evidenced by the words "whichever applies" in the payment provision of the contract, and the language of the contract providing for "a default and collection charge" of 1 percent per month provide an exception to the general rule, entitling it to damages for failure of the plaintiff to complete the work it had agreed to provide. The avowal of the exception does not exonerate Ippolito from proving the general rule inapplicable.

The trial court reasoned that rescission of the contract was not a remedy available to the plaintiff because, based on the prior dealings of the parties, the language of the contract previously quoted must be interpreted as meaning that payment was due at the conclusion of all of the work and that such interpretation prevented the plaintiff from cancelling the contract at any time prior thereto, even if current invoices remained unpaid.

Although the parties to this contract had had a number of prior oral and written contractual contacts, nothing in the record indicates that those prior business interactions involved a contract between Ippolito and another mandating payment to the plaintiff by Ippolito in installments,[4] nor is there any evidence as to the amount involved in any single prior contract

---

[4] The contract between the city of Stamford and Ippolito provided that Ippolito must pay at least 90 percent of the cost of materials delivered by a subcontractor not later than the twentieth day of the month following that in which materials were delivered to the site and the balance due not later than 30 days following completion of that part of the work for which the materials were delivered.

of the parties. The contract under consideration here involved an amount in excess of $250,000.

The plaintiff may have foregone prompt periodic payments in the past. That fact does not justify a finding that it was the intent of the parties that such prior forbearance mandated a future forgiveness of periodic payments due in connection with a contract yet to be executed. *Remington Arms Union Metalic Cartridge Co.* v. *Gaynor Mfg. Co.,* 98 Conn. 721, 731–32, 120 A. 572 (1923). The words "whichever applies" in the contract of the parties must be construed against the background of Ippolito's contract with the city of Stamford which provided for prompt periodic payments to a subcontractor. The plaintiff was entitled to payment within thirty days of its installment billings.

Those paragraphs of the contract relating to default and collection charges and to court costs and attorney's fees, contain no language to indicate that such charges were intended to be an exclusive remedy for a breach of contract. A charge is an expense or cost. It is not a remedy. Standard language in most contracts provides for collection charges on past due liquidated debts.

Pursuant to the contract between the plaintiff and Ippolito, Ippolito is liable for the default and collection charge, and court costs. Also, the plaintiff has a right to attorney's fees. *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 245, 440 A.2d 306 (1982); *Litton Industries Credit Corporation* v. *Catanuto,* 175 Conn. 69, 76, 394 A.2d 191 (1978).

There is error, the judgment is set aside and the case is remanded with the direction that judgment be rendered for the plaintiff against the defendants in the amount of $26,997.18, plus interest, attorney's fees and costs, and that judgment be rendered for the plaintiff on the counterclaim.

In this opinion the other judges concurred.