## MACK FINANCIAL CORPORATION *v.*
## FRANK G. CROSSLEY ET AL.
## (13356)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 6—decision released November 15, 1988

*Bryan L. LeClerc,* for the appellants (defendants).

*Robert H. Hall,* with whom was *E. Huntington Deming,* for the appellee (plaintiff).

PETERS, C. J. The sole issue in this case is whether the principles governing the liquidation of commercial security interests are superseded by a provision in a security agreement that expressly incorporates, by statutory reference, the procedures governing the foreclosure of consumer installment sales. The plaintiff, Mack Financial Corporation, brought this action, as the assignee of a purchase money security interest in a used trailer truck, to recover a deficiency judgment from the

buyers of the truck, the defendants Frank G. Crossley, Joyce Crossley and John W. Brundage. Because of the plaintiff's failure to comply with statutory notice requirements, the trial court first granted the defendants' motion for a directed verdict, but thereafter granted the plaintiff's motion to set aside the verdict and for a new trial. The defendants have appealed. We find error.

The facts relevant to this appeal are as follows. On July 27, 1982, the defendants bought a used Mack tractor trailer truck from Bridgeport Mack Trucks, Inc., for $18,525.36. The defendants intended to use, and did use, the truck to haul goods for hire. The contract of sale, denominated a "retail installment contract," created a security interest on behalf of the seller or its assignee to secure payment of the defendants' outstanding indebtedness. The seller immediately assigned all of its rights in the contract to the plaintiff, and the defendants, duly notified, agreed to make the required payments directly to the plaintiff. After the truck broke down in Oregon on January 14, 1983, the defendants ceased making further payments. The plaintiff repossessed the truck peacefully and resold it, in Oregon, for $1700, without giving the defendants the required notification of its resale plans.

Whether these events permit the plaintiff to recover a deficiency judgment from the defendants is a question that turns, as the parties acknowledge, on the proper interpretation of one of the conditions of the installment contract, a contract drafted by the plaintiff. The contract provides: "In the event that the cash price of the property is $25,000.00 or less and buyer shall default in any of the terms and conditions of this contract, seller shall proceed in accordance with Section 42-98 of the Connecticut General Statutes to the extent that the procedure set forth in the preceding paragraph of this contract is inconsistent with the pro-

visions of said section." The plaintiff maintains that,
with respect to a deficiency judgment, this provision
is strictly gratuitous, while the defendants maintain
that noncompliance with § 42-98 defeats the plaintiff's
cause of action. We agree with the defendants.

To place this question into context, it is important
to clarify three subsidiary matters not seriously at issue:
(1) the fact of the plaintiff's noncompliance with stat-
utory requirements for written notification of sale;
(2) the legal consequence of such noncompliance in
a commercial secured transaction; and (3) the legal
consequence of such noncompliance in a transaction
involving the purchase of consumer goods for consumer
purposes. Each of these matters warrants only brief
discussion.

During the presentation of its case-in-chief, the
plaintiff introduced no evidence that it had given the
defendants any written notice expressly informing the
defendants of the plaintiff's intent to resell the repos-
sessed truck either at a public or at a private sale. For
consumer transactions, such written notification is a
procedural requirement of § 42-98 (d).[1] A similar
requirement, less specific in its details, governs com-
mercial transactions under the Uniform Commercial
Code, General Statutes § 42a-9-504 (3).[2] In the absence

---

[1] General Statutes § 42-98 (d) provides in relevant part: "If the retail buyer
does not redeem such goods within fifteen days after the holder of the con-
tract has retaken possession, the holder of the contract shall sell such goods
at public or private sale which sale may be held not less than fifteen days
and shall be held not more than one hundred eighty days after the retak-
ing. . . . The holder of the contract shall give the retail buyer not less
than ten days' written notice of the time and place of any public sale, or
the time after which any private sale or other intended disposition is to
be made, either personally or by registered mail or by certified mail receipted
for on mailing directed to the retail buyer at his last-known place of busi-
ness or residence."

[2] General Statutes § 42a-9-504 (3) provides in relevant part: "Disposition
of the collateral may be by public or private proceedings . . . . Unless
collateral is perishable or threatens to decline speedily in value or is of a

of any proffer of documentation demonstrating the required written notification, the plaintiff at oral argument in this court conceded that it had failed to comply with the notification requirement of either of these statutes. See *Connecticut Bank & Trust Co.* v. *Incendy,* 207 Conn. 15, 21–24, 540 A.2d 32 (1988).

For entirely commercial transactions, this court in *Connecticut Bank & Trust Co.* v. *Incendy,* supra, 27–28, recently discussed the consequence of noncompliance with the statutory notification requirements of § 42a-9-504 (3). We there held that the failure to provide the required notification serves to limit but not to preclude a creditor's action for a deficiency judgment. Id. The defendants do not contest the proposition that, if *Incendy* applies, their motion for a directed verdict was correctly denied because of the plaintiff's effort, at trial, to make a factual showing of "the amount that should reasonably have been obtained through a sale conducted in accordance with the 'commercially reasonable' requirements of the code." Id., 27.

For entirely consumer transactions, by contrast, Connecticut case law has assigned a more serious consequence to a failure to give the notification of sale that § 42-98 (d) makes a procedural requirement. We must bear in mind that we are dealing with consumer legislation, whose interpretation is to be guided by its remedial purpose of protection for retail buyers. *Barco Auto Leasing Corporation* v. *House,* 202 Conn. 106, 116, 520 A.2d 162 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 95, 513 A.2d 124 (1986). In construing a similar provision in a related section, General Statutes § 42-84, which

type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. . . ."

prescribes the informational content of retail install-ment contracts, we held compliance with that statu-tory requirement to be mandatory. *Keyes* v. *Brown,* 155 Conn. 469, 474–75, 232 A.2d 486 (1967). Relying on *Keyes* v. *Brown,* the Appellate Session held compliance with § 42-98 (d) to be equally mandatory and refused to permit the recovery of a deficiency judgment when proper notification of resale had not been sent. *Colt Employees Federal Credit Union* v. *Lagassie,* 30 Conn. Sup. 604, 606, 316 A.2d 512 (1973), cert. denied, 166 Conn. 660, 314 A.2d 780 (1974). We agree with the holding in that case, as does the plaintiff, whose brief concedes that it would not be entitled to a deficiency judgment had the defendants been "retail buyers."

We can therefore restate the question that we must resolve as follows. If a secured creditor, having rea-son to know of a secured buyer's intention to use con-tract goods for commercial purposes,[3] denominates the security agreement as a "retail installment contract," incorporates therein a reference to consumer proce-dures, and thereafter fails to comply with the referenced consumer procedures, does this procedural default trigger the deficiency rules that apply to commercial transactions or the deficiency rules that apply to con-sumer transactions?

The trial court resolved this question in favor of the plaintiff. In its memorandum of decision setting aside the verdict, the court concluded that the evidence unquestionably established that: (1) the plaintiff did not satisfy the notice requirements of § 42-98; and (2) the defendants bought their truck, for $18,500, in order to haul goods for hire. In these circumstances, the court concluded that "literal compliance" with the statute was not mandatory because the transaction in this case

[3] In completing the written statements in which they applied for financ-ing for their truck purchase, the defendants disclosed their intent to use the truck for a proprietorship that was engaged in the business of trucking.

involved not consumer goods but equipment, as those terms are defined in the Uniform Commercial Code, General Statutes § 42a-9-109.[4] We agree with the trial court's factual findings, but disagree with its legal conclusion.

Commercial contracting parties have considerable freedom to determine the remedial rights that will ensue upon breach. Such authority is expressly conferred upon buyers and sellers of goods in article 2 of the Uniform Commercial Code, General Statutes § 42a-2-719.[5] Absent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598, 424 A.2d 277 (1979).

In this case, the parties' bargain imposes upon the seller or its assignee the burden of complying fully with consumer procedures that would otherwise not be mandatory in this commercial context. Particularly when it is the commercial seller whose drafting has imposed this burden upon itself, we are of the view that the contract should be enforced according to its terms. See *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 130, 239 A.2d 519 (1968). The plaintiff's construction of the contract would attribute no operative meaning whatsoever to the contract's express incorporation of § 42-98. "Parties generally do not insert meaningless provisions in their agreements and

---

[4] General Statutes § 42a-9-109 provides in relevant part: "Goods are (1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes; (2) 'equipment' if they are used or bought for use primarily in business, including farming or a profession . . . ."

[5] General Statutes § 42a-2-719 provides in relevant part: "(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages, (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article . . . ."

therefore every provision must be given effect if reasonably possible. *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 621–22, 220 A.2d 32 (1966). We cannot say that the deliberate reference to a specific statutory section constitutes a meaningless gesture by the parties." *Hatchco Corporation* v. *Della Pietra,* 195 Conn. 18, 23, 485 A.2d 1285 (1985). As written, this contract's reference to § 42-98 can only be given meaningful effect by construing its notification requirements to be as mandatory for this seller and the plaintiff, its assignee, as they would be for any other financier of a consumer transaction. So construed, the contractual reference to § 42-98 makes proper notification of resale a prerequisite to the plaintiff's deficiency action. In the absence of proof of such notification, the defendants were entitled to a directed verdict. The trial court's conclusion to the contrary was erroneous.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other justices concurred.